IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ GARCÍA-FELICIANO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>Defendants. | CIV. NO.: 12-1959(SCC) |

## MEMORANDUM AND ORDER

The facts in this Federal Tort Claims Act case are straightforward. On March 24, 2011, Plaintiff José García-Feliciano was brought to the Clemente Ruíz Nazario Federal Courthouse in San Juan, Puerto Rico, to be sentenced in a criminal case. While at the courthouse, he was in the custody of the United States Marshals Service ("USMS"). After his sentencing, García, along with ten other detainees, was led by one or more deputy

Marshals[1] to the loading dock, from which they would be transported back to the Metropolitan Detention Center—Guaynabo. While moving through the courthouse, García and the other detainees were, in compliance with standard USMS operating procedure, in "full restraints" consisting of "handcuffs, waist chain and leg irons." Docket No. 28, ¶ 8. The detainees traveled to the loading dock on "the route [the USMS] normally used to transport detainees through courthouse[] . . . ." *Id.* ¶ 10. Specifically, they were taken down an emergency staircase.

We have viewed a video of the detainees walking down the stairs. In that video, a deputy Marshal can be seen leading a single-file line of shackled detainees down the stairwell. As he nears the bottom of a flight, García, third in line, loses his footing and tumbles to his left, bounces off the wall, and then falls forward into another wall and onto the stairs' landing.

---

**1.** In its statement of uncontested material facts, the Government says that "several" deputy Marshals were leading the detainees. *See* Docket No. 28, ¶ 9. The field report on which the Government relies refers to the report's author "along with other guards on duty," but it does not give a precise number. *See* Docket No. 28-2. And in the video of the incident, only one deputy Marshal can be seen.

García indisputably suffered injuries as a result of this fall.[2]

The Government has filed a motion for summary judgment that pursues several avenues of relief, chief among them the discretionary function exception to the FTCA. That exception provides that the FTCA's waiver of sovereign immunity does not extend to actions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Where this exception applies, the federal district courts lack subject matter jurisdiction over the lawsuit. *See Wood v. United States*, 290 F.3d 29, 35 (1st Cir. 2007). A "well-established framework governs" application of the discretionary function exception. *Carroll v. United States*, 661 F.3d 87, 99 (1st Cir. 2011). A court is charged with first

**2.** The extent of these injuries is in material dispute, but García claims to have experienced substantial pain. This is enough to defeat the Government's arguments that García's physical injuries were so insubstantial as to deprive the court of jurisdiction under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1346(b)(2) (forbidding prisoners from bringing suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("[T]he injury must be more than *de minimis*, but need not be significant.").

"identify[ing] the conduct that is alleged to have caused the harm." *Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009). Second, the court "determines whether that conduct can fairly be described as discretionary." *Id.* And third, the court asks "whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations." *Id.*

We note that while the discretionary function framework may be "well-established," the practical application of that framework is far from clear cut. *See Shansky v. United States*, 164 F.3d 688, 693 (1st Cir. 1999) (recognizing that the case-by-case application of the exception "has led to some disarray"); *Johnson v. Sawyer*, 980 F.2d 1490, 1502 (5th Cir. 1992) ("[A]s virtually every act of a government employee involves at least a modicum of choice, we must exercise restraint when applying the discretionary function exception."), *vacated on other grounds*, 47 F.3d 716 (5th Cir. 1995) (en banc); *see also* 14 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3658.1 (4th ed.) ("Unfortunately, it is unclear what exactly falls within the scope of [the discretionary function exception], despite an immense amount of precedent that has developed on the subject."). Below, we explain why some of these difficulties

require denial of the Government's motion.

## I. The Discretionary Function Exception

### A. Multiple Causation

According to García (and, indeed, the Government's statement of uncontested facts, *see* Docket No. 28, ¶ 7), García fell because the chain connecting his ankles was too short, and as a result he tripped on his way down the stairs. Watching the video of the incident provided by the Government, this is a plausible account of the fall: in the video, you can see García's left foot suddenly jerk backwards before he falls against the wall. The caselaw directs us to "cut through the plaintiff's characterization of the Government's conduct[] and identify the 'nature and quality of the harm-producing conduct.'" *Rios-Colon v. United States*, 928 F. Supp. 2d 376, 383 (quoting *Fothergill*, 566 F.3d at 252–53). But where that instruction should take us here is not obvious, because there seem to be two discrete actions on the Government's part that caused García's injuries. First, there is the fact that he was walking unaided down a flight of stairs, his movements directed by the Government. For the moment, we will accept the Government's assertion that this was a discretionary function. But second, García was wearing full restraints, including leg irons,

something that the Government admits was non-discretionary.[3] Under a typical causation analysis, we would say that both the direction to walk down the stairs and the restraints were the but-for causes of García's fall, and both were probably also proximate causes. But the caselaw does little to illuminate how a court should proceed when two separate government actions concurrently cause a person's injury—especially when one but not the other is discretionary.[4]

The Government relies principally on *MacCaffray v. United*

---

**3.** Specifically, the Government admits that there was a policy mandating that García be restrained, but it nonetheless maintains that the discretionary function exception applies to the decision to restrain García. As we explain in the next section, we disagree.

**4.** On this point, we have found two treatises holding that the "discretionary-function exception does not apply if two governmental acts, one discretionary and the other not, are concurrent causes of an injury." 57 GEORGE BLUM, ET AL., AMERICAN JURISPRUDENCE § 56 (2d ed.); *see also* 6 ANTHONY Z. ROISMAN, LITIGATING TORT CASES § 66:47. But each of these treatises—which seem concerned with state law—cite a single case, from a Tennessee intermediate appellate court and applying a Tennessee analogue to the FTCA, for the proposition. *See Anderson v. City of Chattanooga*, 978 S.W.2d 105, 109 (Tenn. App. 1998); *see also Bowers by Bowers v. City of Chattanooga*, 826 S.W.2d 427, 433–34 (Tenn. 1992) ("We hold that where two government acts are concurrent causes of an injury, one of which arises from a discretionary function, the other of which does not, the exception to the removal of immunity contained in [the Tennessee analogue to the FTCA] does not apply.").

*States*, Civ. No. 97-403, 1998 WL 560047 (D. Vt. Aug. 27, 1998). In that case, a detainee brought suit against the United States for injuries he suffered as a result of not being seatbelted into the Marshal-driven car in which he was being transported when that car got in an accident. *See id.* at *1–2. The plaintiff's FTCA claim was dismissed because the Court held that the deputy Marshals had discretion regarding whether or not to seatbelt the plaintiff, and the discretion that they had exercised in deciding not to seatbelt the plaintiff was policy-driven. *Id.* at *3 (noting that the decision was based on "safety concerns involving the use by prisoners of the safety belts to break handcuffs and escape, or any attempts to injure deputies who were fastening or releasing their seatbelts"); *see also Vinson v. United States*, Civ. No. 10-79, 2011 WL 3903199, at *4 (D.S.C. Sept. 2, 2011), *aff'd*, 453 F. App'x 221 (4th Cir. 2011). The Government believes *MacCaffray* to be directly on point, but its position ignores the crucial distinction between the two cases: in *MacCaffray*, the use of seatbelts was found to be discretionary, but here, the use of restraints was not.

Furthermore, a later case relying on *MacCaffray* sheds light on the course we should take here, where two causes are alleged to have been responsible for García's injuries. In

*Vinzant v. United States*, the plaintiff, as in *MacCaffray*, complained of the Marshals' decision not to seatbelt him during transportation, but he also complained of their allegedly reckless driving. *See Vinzant*, Civ. No. 06-10561, 2010 WL 1856277, at *1 (E.D. La. May 7, 2010). With regard to the lack of seatbelts, the court followed *MacCaffray*, finding that the decision on whether to buckle-in detainees was "within the discretion of each United States Marshal." *Id.* However, the court concluded that while this fact barred the plaintiff's FTCA claim with regard to the seatbelts, it had no effect on his claims regarding the deputies' allegedly reckless driving. *Id.* at *6 ("The other alleged bases of liability under the FTCA suggested by [the plaintiff] in his complaint remain viable."), *aff'd*, 458 F. App'x 329 (5th Cir. 2012) (per curiam); *see also Dobrowski v. United States*, Civ. No. 11-2835, 2013 WL 5954901, at *3–4 (E.D. Cal. Nov. 7, 2013) (following *Vinzant* and dismissing detainee's FTCA claim for failure to seatbelt, but maintaining claims for negligent driving and failure to seek medical care).

*Vinzant* and *Dobrowski*, then, actually suggest that complete dismissal would be unwarranted here, but they do not answer the question completely. In those cases, the various alleged causes of the plaintiffs' injuries were more separable than the

alleged causes are here. That is, the car crashes in *Vinzant* and *Dobrowski* may well have been necessary and sufficient causes for at least some portion of the plaintiffs' injuries in those cases, and it is not clear how either of those courts would have treated injuries "caused" by the crash but aggravated by the lack of seatbelts.[5] In our case, by contrast, neither the stairs nor the restraints are likely to have been a sufficient cause of García's accident; instead, the two causes seem to have worked in concert, causing García's injuries concurrently. This presents complicated questions regarding how to proceed: if we follow *Vinzant* and only permit the restraint claim, substantial evidence regarding the route will be necessary at trial. Nonetheless, the fact of restraint seems to be at the heart of García's claims. After all, going down stairs is a trivial task in most cases; that it was dangerous in this case was because of the non-discretionary act of restraining García. For this reason, we conclude that the discretionary function exception should not apply where two causes—one discretionary and one not—are

**5.** In *Vinzant*, at least, the court ultimately concluded that the driving had not been negligent, obviating such a complication. *See Vinzant v. United States*, 458 F. App'x 329, 331 (5th Cir. 2012) (per curiam) (noting that the trial court found in favor of the Government after a bench trial).

said to cause the plaintiff's injury, especially where the non-discretionary cause is primarily responsible for the plaintiff's injuries.

**B. Policies and Tortfeasors**

It is necessary next to give some attention to two related problems in applying the discretionary function exception: what is a policy?, and whose conduct are we concerned about? The Government argues that the mandatory policy requiring detainees to be restrained during transport was itself an action of discretion implicating the exception and removing this case from our subject matter jurisdiction. To be sure, the policy was enacted in furtherance of the sort of goals that the exception is intended to protect. On the other hand, the policy by its terms bound the individual deputies with whom García interacted; those deputies themselves were without discretion, and therefore would seem to fall outside the exception's protection. So the difficulty is one of line drawing: whose conduct—and therefore which policies—are we talking about when we apply the discretionary function exception?

The answer to this question is complicated by a procedural formality required by the FTCA. In a normal lawsuit, a plaintiff would sue the individuals personally alleged to have injured

the plaintiff, or, for example, their supervisors or employers, and the theories of liability would vary accordingly. Here, though, the FTCA prohibits the plaintiff from suing individuals, supervisors, or even governmental agencies; instead, the plaintiff sues the United States itself.[6] Nonetheless, the precedent directs us to "cut through the plaintiff's characterization of the Government's conduct[] and identify the 'nature and quality of the harm-producing conduct.'" *Rios-Colon*, 928 F. Supp. 2d at 383 (quoting *Fothergill*, 566 F.3d at 252–53). This suggests that we are to look, quite reasonably, at the conduct of the individuals said to have personally injured the plaintiff. This is confirmed by the statute's language, which refers to the "negligent or wrongful act or omission of any employee of the Government," 28 U.S.C. § 1346(b)(1), and by the cases holding that the Government is not liable for the conduct of government contractors, a doctrine that "eliminat[es] vicarious liability as a theory of recovery against the federal govern-

**6.** For this reason, we GRANT the motion for summary judgment as to the U.S. Marshal Service, which García now agrees is not a proper party to this lawsuit.

ment." *Carroll v. United States*, 661 F.3d 87, 92 (1st Cir. 2011).[7] So, we must consider the exception as applied to the acts of a particular government employee. *See United States v. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984) ("[T]he basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.").

Applying these principles to the present case, we conclude that we must look at the conduct of the individual deputies, not the officials who promulgated the restraint policy. And those deputies had no discretion regarding whether to restrain García, so their actions fall outside of the exception. We note, however, that there is an implicit tension between this holding and some of the cases we have cited. In *Vinzant*, for example,

**7.** What is referred to as the independent contractor exception is mandated by statute, 28 U.S.C. § 2671 (defining "federal agency" as not including govermental contractors), but it and the case law holding that there may be liability where the Government closely supervises the contractor, *see, e.g.*, *United States v. Orleans*, 425 U.S. 807 (1976), together suggest that we must consider the conduct of the individual Government employees who are said to have injured the plaintiff.

it seems that the United States Marshal for the Eastern District of Louisiana had made a specific policy choice *not* to use seatbelts during prisoner transport. *See Vinzant*, 2010 WL 1857277, at *4 ("In the Eastern District of Louisiana, obviously, the choice ha[d] been made not to use safety belts during inmate transport."). But the Marshal, who unquestionably had discretion to set such a policy, was not the person who failed to buckle-in the plaintiff. His deputies were, and they, apparently, *did not* have any discretion regarding whether to secure the plaintiff. And as it was their conduct, not the Marshal's, that was alleged to have injured the plaintiff, it is not clear why the court held that the discretionary function exception applied. We find this particularly odd given that many other cases have held that injuries caused by failures of, for example, prison guards to follow post orders or prison-specific policies were outside of the exception. *See, e.g.*, *Garza v. United States*, 161 F. App'x 341 (5th Cir. 2005) (holding that exception did not apply where individual guard did not follow a "post order"); *Irvin v. Owens*, Civ. No. 10-1336, 2012 WL 1534787, at *6 (D.S.C. Apr. 30, 2012) (finding that exception did not apply where prison guards failed to follow policy "requiring a staff member to be on the sidelines during intermural" prison league

basketball games); *Brembry v. United States*, Civ. No. 10-388, 2011 WL 121741 (W.D. Va. Jan. 13, 2011) (following *Garza*); *D'Antuono v. United States*, Civ. No. 07-123, 2010 WL 2465493 (N.D. Tex. June 15, 2010) (following *Garza*). These policies and orders—like the policy in *Vinzant*—were undeniably driven by the sort of concerns motivating the discretionary function exception, yet that fact did not protect the United States from liability. To our mind, these cases cannot be reconciled,[8] and

**8.** A possible explanation is that the case law is primarily concerned with *violations* of governmental policies that result in a plaintiff's injuries, *see, e.g.*, *Fothergill*, 566 F.3d at 254 (holding that dismissal was proper where no "mandatory law, rule, regulation, or policy" *required* the government to take the steps the plaintiff thought necessary), whereas we are here concerned with the possibility that the deputy Marshall injured García by *following* a mandatory policy. But focusing solely on the question of discretion—and not whether a policy was or was not followed—answers the question of the exception's applicability. Certain good faith actions by government employees in following statutes and regulations would still be outside of the FTCA's waiver of sovereign immunity, due to the Act's "due care" exception. 28 U.S.C. § 2680(a). That exception would not apply here, however, because a policy—not a statute or regulation—proscribed the deputy's conduct. *See, e.g.*, *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005) (requiring that a statute or regulation "specifically proscribe a course of action" for the due care exception to apply); *see also* 28 U.S.C. § 2680 (using the phrase "statute or regulation" to delimit the due care exception, while using the broader phrase "discretionary function or duty" to delimit the discretionary function exception).

we will follow *Garza* because its implicit reasoning seems to better understand the scope of the exception, which focuses on whether the individual tortfeasors—not their supervisors—were acting with discretion. *See United States v. Gaubert*, 499 U.S. 315, 324–25 (1991) (holding that a governmental agency's "internal guidelines" may define the scope of an employee's discretion in an FTCA claim).

This analysis may apply as well to the route by which García was taken through the building, which we assumed above was discretionarily chosen. The Government itself says that this was the USMS's "normal[]" route within the building." Docket No. 28, ¶ 10. At this juncture, we don't know what the Government means by "normal," but it may well have been a route mandated by those in charge of the district office. If so, the choice by the deputy on duty to use it was nondiscretionary.[9] *See Ignatiev v. United States*, 238 F.3d 464, 466–67

---

**9.** The extent to which the Government provided discovery on this question is unclear. Nonetheless, the Court finds the matter important to the ultimate resolution of this case. Accordingly, the Government shall, by May 1, 2014, file with the Court any and all rules, orders, or memoranda, of any level of formality (including, *e.g.*, emails) and from any entity (*e.g.*, USMS, GSA, or the District Court), concerning the route or procedure for moving prisoners through the courthouse during the period of time referenced in the complaint. No extensions of time will

(D.C. Cir. 2001) (overturning district court's dismissal of the plaintiff's FTCA claim, and permitting further discovery, where it was likely that the agency in question had internal policies governing the relevant governmental employees' conduct).

Finally, whatever discretion the deputies might have had in leading García through the courthouse, it might not have been the sort of discretion that destroys this court's jurisdiction. *McKinney v. United States* is on point. In that case, much like in ours, a prisoner, restrained and in custody, fell down a flight of stairs. *See McKinney*, 950 F. Supp. 2d 923, 925 (N.D. Tex. 2013). The court rejected the Government's discretionary exception defense because the Government was undoubtedly responsible for the plaintiff's safety, and even if the specific steps it took in exercising that duty were not proscribed, it did not have "unchecked discretion to blatantly disregard the mandatory obligation" to provide for the plaintiff's safekeeping. *Id.* at 928. The prisoner in *McKinney*, who, notably, was elderly and infirm, was at great risk while walking down the stairs unaided and in restraints; the court held that the

---

be allowed.

Government, which knew of this risk, could not evade responsibility by claiming that it was exercising discretion. *Id.* (concluding that "the decision made by the [Government] officials [was] not 'of the kind that the discretionary function exception was designed to shield'" (quoting *Gaubert*, 499 U.S. at 322–23)). Though García is neither elderly nor infirm, there is nonetheless an obvious and substantial risk in sending shackled prisoners unaided down staircases, and a decision to use such a route does not obviously implicate the type of judgment that the exception is intended to protect.

**C. Summing Up**

For the reasons stated above, we conclude that, at least on the filings now before us, the discretionary function exception does not apply, and dismissal would therefore be improper. That said, "the parties are forewarned that if the Government establishes—be it belatedly, or even inadvertently—that any exception to the FTCA properly applies, dismissal will lie without regard to the case's posture, its merits, or the public and private time and expense that will have been wasted." *Rios-Colon*, 928 F. Supp. 2d at 386 (citing *Bolduc v. United States*, 402 F.3d 50, 54–55 (1st Cir. 2005)). Accordingly, the parties "are strongly encouraged to hedge against th[is] uncertainty by

reaching a compromise of their own accord." *Id.*

**II. Other Matters**

The Government also argues, as a fallback, that García's suit is barred because there is no private analogue to the conduct of which he complains. As the Government correctly notes, the FTCA only makes the Government liable for conduct for which a private person would also be liable under state law. *United States v. Olson*, 456 U.S. 43, 45–46 (2005). As such, the Government is not liable where state law would only impose liability on a state or municipality, but not on a private individual. *Id.* That said, the question is *not* whether the conduct involved is "uniquely governmental"; for example, "[p]rivate individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon." *Id.* at 47 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 69 (1955)). Here, the Government suggests that the United States cannot be liable because "there is no private analogue" to "the law enforcement function of transporting prisoners." Docket No. 27, at 5. But this misses *Olson*'s point: while private individuals do not transport prisoners, they regularly transport other

individuals with whose care they are charged (some of whom might have their movement restrained or limited in various ways), such as children, medical patients, the elderly, and the physically impaired. It is simple to draw an analogy between such relationships and the relationship of a deputy Marshal and the detainee he transports.

The Government also argues that "the video clearly shows that the fall was due to [García's] own negligence, since [he] lost his footing and tripped." Docket No. 27, at 6. Though the video could support the conclusion that the fall was nothing but a normal trip, having nothing to do with any act or omission on the Government's part, it does not compel such conclusion. As we've said, you can see García's leg pull backwards, which may indicate it was yanked by the chain. In any case, this is a matter inappropriate for resolution before hearing the parties' testimony, and so we must reject the Government's argument on this point. Finally, the Government makes an argument against a finding of negligence that is premised entirely on the applicability of the discretionary function exception. Because we reject the exception's applicability, however, we must also reject this negligence argument.

**III. Conclusion**

The motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to the U.S. Marshal Service, the claims against which are accordingly DISMISSED WITH PREJUDICE, and it is DENIED in all other respects.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of April, 2014.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE