IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ GARCÍA-FELICIANO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIV. NO.: 12-1959(SCC) |

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Plaintiff José García-Feliciano pled guilty to a conspiracy to possess with intent to distribute narcotics, and he was remanded pending sentencing. On March 24, 2011, he was brought to the federal courthouse in Hato Rey for his sentencing hearing. While restrained and under the custody of the U.S. Marshals Service, García fell down a flight of stairs, suffering various injuries. He brought this Federal Tort Claims Act suit seeking compensation for what he says was the Marshals

Service's negligence in having him walk restrained down a flight of stairs without assistance. Relying on the discretionary function exception to the FTCA's waiver of sovereign immunity, the Government sought dismissal. Docket No. 26. I denied the Government's motion, however, explaining that the scope of the Marshals Service policies, as they related to García's restraint and movement through the courthouse on March 24, 2011, were not entirely clear. *See García-Feliciano v. United States*, Civ. No. 12-1959(SCC), 2014 WL 1653143, at *4 n.9 (D.P.R. April 23, 2014) (ordering the Government to produce any policies regarding the route that prisoners take through the building); *id.* at *6 (warning that if the Government later proved that the discretionary function exception applied, the case would be dismissed). The Government moved for reconsideration, Docket No. 41, which was denied based on an understanding that the applicability of the discretionary function exception could best be addressed at trial, Docket No. 47 ("The Court understands that the question of the discretionary function exception's applicability is a close one. Given that I have already ruled on the matter, the better course, then will be for the Government to renew its arguments at trial."). Accordingly, a bench trial was held on April 13, 2015.

The facts in this case are fairly simple. On March 24, 2011, after García's sentencing hearing, two Deputy Marshals—Andres Jiménez and another unidentified deputy—were responsible for leading García and ten other detainees to the courthouse's loading dock, where they would be put on a bus and returned to the federal detention center in Guaynabo. Deputy Jiménez, who was in charge of the detainees' transport that day, testified that typically, he would take the detainees to the loading dock on an elevator. That day, however, he chose to take the stairs. Deputy Jiménez credibly testified that the choice of route through the building is chosen by the Deputy assigned to transport the detainees based on a large number of factors, including the number of detainees being moved, the number of civilians in the building, and whether those civilians have any relationship to the persons being transported.[1] These and other questions are considered

---

1. The District of Puerto Rico has two federal courthouses, both in San Juan; one is in the historic district of Old San Juan, and the other is in the business district of Hato Rey. The District's magistrate judges and all but one of its active district judges work out of the Hato Rey courthouse, which is thus the site of the vast majority of the District's criminal hearings. And these hearings are numerous: in the 2014 fiscal year, criminal cases were commenced against more defendants in the District of Puerto Rico than in all but nine of the United States's judicial

by the Deputy Marshal, who makes a route decision that he or she believes will allow for the detainees to be transported in the safest manner possible. Deputy Jiménez does not remember why he chose to take the stairs that day, but he testified that he must have made the decision after assessing the situation and based on some perceived risk.

Deputy Jiménez led the detainees down the stairs in a single-file line. Deputy Jiménez went first, followed by the eleven detainees, followed by the other Deputy on duty. According to security camera footage, García was the third detainee in line. *See* JOINT EXH. E. García, like all of the other detainees, was "fully restrained," as defined by the Marshals Service. *See* JOINT EXH. D, § 9.18(D)(2). This means that he was wearing handcuffs attached to a waist chain, along with leg

---

districts. *See* ADMIN. OFFICE OF U.S. COURTS, U.S. DISTRICT COURTS—CRIMINAL DEFENDANTS COMMENCED, TERMINATED, AND PENDING (INCLUDING TRANSFERS) DURING THE 12-MONTH PERIODS ENDING SEPTEMBER 30, 2013 AND 2014, *available at* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2014/appendices/D00DSep14.pdf. Nonetheless, the federal courthouse in Hato Rey, unlike most federal courthouses, lacks any hallways or elevators dedicated to the transport of detainees. Accordingly, detainees must be moved through the courthouse's public spaces, creating a special potential for security problems, especially when those public areas are crowded.

| GARCIA-FELICIANO v. UNITED STATES | Page 5 |
|---|---:|

irons.[2] *See id.*; *see also* Joint Exh. E. Deputy Jiménez testified that he had no discretion in choosing the type of restraints that García wore; his only choice, he said, was to fully restrain García during transportation through the building.[3] García testified that he tripped and fell because his leg irons were too short, causing him to trip. Given that he and other detainees managed to walk down other stairs without incident, it seems

---

2. During the trial, and in response to Deputy Jiménez's suggestion that many detainees grip the handrail when descending the stairs, García demonstrated the range of motion that handcuffs attached to a waist chain allow. He could move his hands only a foot or so out from his body, and he could move them no further up towards his head. When trying to grip an approximation of a handrail, García could not do so without turning his body to face it. Notably, in the video of the incident *no* detainee is seen holding the handrail. *See* JOINT EXH. E.

3. The Marshals Service's Policy Directive 9.18 requires prisoners to "be fully restrained during transportation." JOINT EXH. D, § 9.18(D)(3). The Directives offer some discretion—the choice between full restraints or cuffing behind the back—when escorting detainees within a facility, *id.* § 9.18(E)(3)(a), but because García was being transported to the federal detention center, not to another location within the courthouse, that provision would not apply. The Directives also provide that during "short haul" transportation, detainees may, "with district management approval," be cuffed behind the back rather than fully restrained. *Id.* § 9.18(E)(2)(e). However, there was no testimony during the trial that such approval existed. To the contrary, Deputy Jiménez testified unequivocally that he had no discretion regarding how to restrain García.

clear that the leg chains were not too short to entirely prevent walking down stairs. Even so, video of the incident supports García's testimony that his fall was caused by tripping over the leg irons. The video's resolution is not good enough to see the chain as anything more than a blur, but if the video is watched at very slow motion, García's left foot can be seen jerking backward just as it is about to touch the ground on the last step in the flight of stairs. As that jerk happens, García falls forward and to the side, hitting the wall to his left, ricocheting off that wall and into one in front of him, and then falling to the floor. I find that the cause of the fall was García tripping over the chain, probably because it got caught under his right foot as he walked down the stairs, causing there to be insufficient slack for his left foot to firmly contact the ground.

In considering the applicability of the discretionary function exception, a court must "cut through the plaintiff's characterization of the Government's conduct[] and identify the 'nature and quality of the harm producing conduct.'" *Rios-Colon v. United States*, 928 F. Supp. 2d 376, 383 (D.P.R. 2012) (quoting *Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009)). Here, the conduct that harmed García was Deputy Jiménez's decision to have García walk, unaided, down a flight of stairs

while fully restrained. Importantly, this conduct involved multiple, discrete decisions on Deputy Jiménez's part. First, there was the decision to fully restrain García, regarding which Deputy Jiménez had no discretion. Second, there was the decision to use the stairs, regarding which Deputy Jiménez did have discretion. And third, there was the decision not to assist García down the stairs, regarding which Deputy Jiménez also had discretion.[4]

The difficult question presented by this case is thus how to

---

4. Nothing presented at trial suggested that Deputy Jiménez had a non-discretionary duty to assist García down the stairs. In attempting to make a contrary showing, García relied heavily on a Policy Directive requiring that detainees not be left unattended while in Marshals Service custody. *See* JOINT EXH. D, § 9.18(E)(1)(e) ("Prisoners will not be secured to any fixed object that would endanger the prisoner's life or be left unattended."). Though Deputy Jiménez could not see García at the time García fell, García was not unattended at that time; to the contrary, he was being moved through the courthouse in the active custody of two deputies. Further, even if "unattended" were equated with "out of the deputy's vision," the fall happened fast enough that even if Deputy Jiménez did see the fall, he could not have prevented it; thus, García being unattended in that sense could not have been the proximate cause of his injuries. And last, a prohibition on leaving a detainee "unattended" cannot be fairly read to require a deputy to be physically supporting a detainee at all times; thus, this Policy Directive cannot be read as mandating that Deputy Jiménez physically assist García down the stairs.

| GARCIA-FELICIANO v. UNITED STATES | Page 8 |
|---|---:|

proceed when "two discrete actions on the Government's part"—one discretionary and the other not—together cause a claimant's injuries. *García-Feliciano*, 2014 WL 1653143, at *2. The most relevant cases I have found on this point are *Vinzant v. United States* and *Dobrowski v. United States*. In both of these cases, detainees under Marshals Service custody sued after allegedly suffering injuries because the van in which they were being transported was involved in an accident. In each case, the plaintiff pressed two theories of liability: first, that the Marshals Service was negligent in not buckling the detainee into his seat; and second, that the van was driven recklessly. *Dobrowski*, Civ. No. 11-2835, 2013 WL 5954901, at *3–4 (E.D. Cal. Nov. 7, 2013); *Vinzant*, Civ. No. 06-10561, 2010 WL 1857277, at *1 (E.D. La. May 7, 2010), *aff'd*, 458 F. App'x 329 (5th Cir. 2012). In both cases, the courts found that the decision regarding seatbelts was discretionary, while, of course, the decision to drive recklessly was not; thus, while the courts dismissed the plaintiffs' FTCA claims regarding the seatbelts, they permitted the claims regarding the driving to go forward. *Dobrowski*, 2013 WL 5954901, at *4; *Vinzant*, 2010 WL 1857277, at *6.

Previously, I suggested that *Vinzant* and *Dobrowski* augured

| GARCIA-FELICIANO v. UNITED STATES | Page 9 |
|---|---|

well for García's claim. On reflection, however, and after hearing the evidence at trial, I conclude that this case does not fit the *Vinzant* paradigm. The crucial point is that in *Vinzant* and *Dobrowski*, both of the discrete actions alleged to have brought about the plaintiffs' injuries—a failure to use seatbelts and reckless driving—were themselves negligent. Thus, even if the seatbelt allegations were put to the side, the plaintiffs could argue that official negligence caused their injuries. In this case, by contrast, the two discrete actions—the full restraint and the use of the stairs—were allegedly negligent only in combination. That is, if the choice of route is put to the side, all that is left is the decision to fully restrain García, and that decision, standing alone, was not negligent. Thus, while the discretionary function exception does not necessarily bar García's claim, it requires the Court to not consider, in determining whether there was negligence, the route that Deputy Jiménez chose to use that day. And without considering the route, there is no basis for finding negligence.

I find, moreover, that *McKinney v. United States*, 950 F. Supp. 2d 923, 928 (N.D. Tex. 2013), which I mentioned in my earlier opinion, *see García-Feliciano*, 2014 WL 1653143, at *5, cannot save García's claim. In *McKinney*, the court considered

| GARCIA-FELICIANO v. UNITED STATES | Page 10 |
|---|---|

the FTCA claim arising out of an accident that occurred when a prisoner fell down a flight of aircraft stairs while under Bureau of Prisons custody. *See id.* at 925. The claimant, who was elderly and in poor health, was made to walk down the stairs despite being fully restrained. *See id.* The *McKinney* court relied principally on 18 U.S.C. § 4042(a)(2), which requires BOP officials to "exercise . . . ordinary diligence to keep prisoners safe and free from harm." *Id.* at 927. The court held that although BOP officers had "broad discretion" under § 4042, they could not "blatantly disregard the mandatory obligation" to keep prisoners safe. *Id.* at 928. The court thus held that the discretionary function exception did not apply because the claimant was at great risk walking down the stairs in his condition, and the officials knew of this risk; thus, the officials were "bound to exercise ordinary care in providing for [the claimant's] safety." *Id.* In the alternative, the court found that the decision not to assist the claimant was not guided by "legitimate policy considerations." *Id.* at 930. The court thus denied the Government's Rule 12(b)(1) motion.[5] *Id.*

---

5. The claimant's case was later dismissed on summary judgment after the court determined that he had no cognizable injury. *McKinney v. United States*, Civ. No. 12-394, 2013 WL 4050146, at *6 (N.D. Tex. Aug. 9, 2013),

| GARCIA-FELICIANO v. UNITED STATES | Page 11 |
|---|---:|

In this case, the Marshals Service undoubtedly had an obligation to provide for García's safety. It failed in this obligation, and so I share the sentiments that motivated the *McKinney* court. Nonetheless, I cannot follow that decision, because the caselaw provides that officials generally have discretion in determining how to comply with broad safety mandates, and in determining how to balance those mandates with other considerations (including the security of the courthouse and the Deputy Marshals themselves). In *Shansky v. United States*, for instance, the First Circuit noted that while the National Park Service was bound by a broad and general mandate to protect human life, it nonetheless had broad discretion in determining how to achieve that goal while also balancing it against competing concerns. 164 F.3d 688, 691 (1st Cir. 1991). And in a more recent case, the First Circuit explained that its precedents "reject[]" the argument that broad safety concerns may "dictate[] a specific course of conduct that could not be subject to policy analysis." *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 99–100 (1st Cir. 2012). As the First Circuit explained in *Sanchez*, this is because "conduct does not

---

*aff'd,* 584 F. App'x 229 (5th Cir. 2014) (memorandum opinion).

involve an element of judgment or choice" only "if a 'federal statute, regulation, or policy *specifically* prescribes a course of action for an employee to follow.'" *Id.* at 97 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)) (emphasis supplied by *Sanchez*). Here, of course, no specific course of conduct was prescribed, and so while I believe that the Marshals Service put García at risk by having him walk unaided and shackled down a flight of stairs, I see no basis for sustaining his lawsuit: the Government's action were discretionary, and they were plainly motivated by policy considerations.

For the reasons stated above, I find that the discretionary function exception to the FTCA bars García's claim. Judgment dismissing this case will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March, 2015.

S/ SILVIA CARREÑO-COLL
UNITED STATES MAGISTRATE JUDGE